261 N.J. Super. 245 (1993)
618 A.2d 870
CARTER LINCOLN-MERCURY, INC., LEASING DIVISION, PLAINTIFF-APPELLANT,
v.
EMAR GROUP, INC., DEFENDANT-RESPONDENT, AND ALL POINTS, INC., A/K/A GOLDSTAR EXPRESS AND ELLIOTT H. GOLDSTEIN, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1992.
Decided January 6, 1993.
*246 Before Judges BILDER, BAIME and WALLACE.
William G. Wright argued the cause for appellant (Farr, Lyons, Burke Gambacorta & Wright, attorneys; Mr. Wright, on the brief).
David B. Katz argued the cause for respondent (Orloff, Lowenbach, Stifelman & Siegel, attorneys; Jeffrey M. Garrod and Mr. Katz, of counsel and on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal by the owner-lessor of a motor vehicle from an order of the Law Division granting an insurance broker a summary judgment dismissing the owner's complaint for losses suffered because of the failure of the broker to furnish the lessee with an insurance policy adequate to furnish appropriate indemnity to the owner as loss payee when the vehicle suffered collision damage. We are confronted with two issues, novel to our state: first, whether the well-established duties owing by a broker to an insured, see Rider v. Lynch, 42 N.J. 465, 476, 201 A.2d 561 (1964), are also owed to a named loss payee under the policy; and second, if such a duty exists, whether the broker is liable to the loss payee for failing to use reasonable care, skill, and judgment in selecting a financially stable insurer.
The relevant facts as presented in cross-motions for summary judgment are relatively simple. In February 1986, plaintiff Carter Lincoln-Mercury, Inc., Leasing Division, rented a 1985 White Diesel Tractor to defendant Goldstar Express, an over-the-road trucking company. Under the lease, Goldstar was to provide collision insurance which would protect plaintiff's interest. *247 On December 16, 1988, Goldstar appointed defendant Emar Group, Inc. as its exclusive broker of record for all lines of insurance and received an appropriate policy, effective December 17, 1988 to December 17 1989, which Emar had obtained from American Lloyds of Metairie, Louisiana. On December 27, 1988, Goldstar furnished Emar with a list of the finance companies who were loss payees on the policy and thereafter a policy endorsement was issued which, effective December 17, 1988, inter alia, named plaintiff as a loss payee with respect to the 1986 White tractor. On February 16, 1989, an appropriate certificate of insurance was issued to plaintiff. On February 17, 1989, plaintiff's tractor was substantially damaged in a motor vehicle accident. Its indemnity claim against American Lloyds for the approximately $22,000 loss was not paid because the insurance company was insolvent. On June 21, 1989, a Louisiana District Court placed the company in liquidation under the direction of the Louisiana Commissioner of Insurance. The undisputed facts also show that on September 19, 1988 the same Louisiana District Court had placed American Lloyds in conservation under the direction and control of the Louisiana Commissioner of Insurance and that this situation had continued to exist when Emar obtained the insurance policy which ultimately failed to indemnify plaintiff for its collision loss. It is also undisputed that American Lloyds had not been authorized to do business in this State, thus depriving plaintiff of assurances as to the financial stability of the insurer, see N.J.S.A. 17:32-2, and the benefits of the New Jersey Property-Liability Insurance Guaranty Association, particularly a claim against the guaranty fund, see N.J.S.A. 17:30A-5(e).

I. The Duty to the Loss Payee

Although novel to New Jersey courts, the very issue before us was carefully examined and decided in a well-reasoned opinion by Judge Debevoise in our federal district court. Impex Agricultural v. Parness Trucking, 576 F. Supp. 587 (D.N.J. 1983).

*248 Here, the court must determine whether insurance brokers who owe a duty of care to those persons engaging their services also owe a duty to third persons who are potential beneficiaries of the insurance policies procured by the brokers. Id. at 589.
In Impex, the plaintiff was a customer of a common carrier whose insurance broker had failed to follow the carrier's instructions to obtain a policy which would have covered the customer's losses. Claiming a status as a third-party beneficiary, Impex sought recovery against the broker on grounds of negligence, breach of contract and fraud. The broker moved for a dismissal of the complaint for failure to state a claim upon which relief may be granted. The motion was granted as to the fraud claim but denied as to the claims based on negligence and breach of contact. Id. at 592.
In upholding the plaintiff's claim, Judge Debevoise refused to be diverted by issues of privity or distinctions between contract and negligence claims, cogently noting that the essential question of law is whether plaintiff's interest as a named loss payee under the insurance policy obtained by the broker for the named insured is entitled to legal protection against the broker's deficient conduct. Id. at 590.[1] Applying New Jersey law, he concluded the broker has "a duty to exercise due care in its undertakings to avoid damage to persons within the foreseeable zone of hazard created by its activity". Id. at 591. We agree.
The obligations of a broker have been clearly spelled out in Rider v. Lynch, supra.
One who holds himself out to the public as an insurance broker is required to have the degree of skill and knowledge requisite to the calling. When engaged by a member of the public to obtain insurance, the law holds him to the exercise of good faith and reasonable skill, care and diligence in the execution of the commission. He is expected to possess reasonable knowledge of the types of policies, the different terms, and the coverage available in the area in which his principal seeks to be protected. If he neglects to procure the insurance or if the policy is void or materially deficient or does not provide the coverage he *249 undertook to supply, because of his failure to exercise the requisite skill or diligence, he becomes liable to his principal for the loss sustained thereby. Id. [42 N.J.] at 476 [201 A.2d 561].
As Judge Debevoise noted, this duty to the prospective insured has been implicitly recognized as extending to third parties in a number of New Jersey cases in which parties have been foreseeably injured as a result of a failure to properly execute an undertaking to which the injured party was not a party but was clearly foreseeably affected. See Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983) (accountant who prepared incorrect financial statements liable to third parties who purchased stock in a publicly-held corporation in reliance on the statements); Juliano v. Gaston, 187 N.J. Super. 491, 455 A.2d 523 (App.Div. 1982), certif. den., 93 N.J. 318, 460 A.2d 709 (1983) (subcontractor liable to homeowner for negligent work); Essex v. New Jersey Bell Telephone, 166 N.J. Super. 124, 399 A.2d 300 (App.Div. 1979) (negligent performance of contract may create liability for resulting injury to third person); Abel Holding Co., Inc. v. American Dist. Tel., 147 N.J. Super. 263, 371 A.2d 111 (App.Div. 1977) (same); Eschle v. Eastern Freight Ways, 128 N.J. Super. 299, 319 A.2d 786 (Law.Div. 1974) (insurance broker may be liable to injured third person for negligent failure to procure the requested automobile insurance); Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370, 297 A.2d 203 (Law Div. 1972) (bailee's security agency liable to bailor for improperly protected stolen goods).
Here we have an a fortiori case. Plaintiff, the lessor-owner of the insured truck, was not only foreseeably affected by the broker's performance but, here, provision for loss-payee endorsements was an explicit part of the policy from the inception.
At oral argument below and in its brief before us, Emar has relied upon general agency principles which limit the liability of disclosed agents to their principals. See 2 Restatement Agency 2d, §§ 352, 357. The reliance is misplaced. Emar was not an agent but a broker with contractual obligations to its *250 client-customer Goldstar for whom it was obtaining the insurance policy. Similarly without merit is its reliance on Wang v. Allstate Ins. Co., 125 N.J. 2, 592 A.2d 527 (1991), a case which dealt with the duty of a carrier or its agents to advise an insured concerning the possible need for higher policy limits upon renewal of an automobile policy, a subject irrelevant to the instant matter.
Finally, as the Supreme Court noted in Wang, supra., "the question of whether a duty exists * * * is largely a question of fairness or policy." Id. at 15, 592 A.2d 527. As did Judge Debevoise, we find that the recognition of the insurance broker's duty to third parties who are potential beneficiaries of the insurance policies procured by the brokers, particularly when that third party is an anticipated loss payee, advances a well-established strong state policy favoring insurance coverage, see Impex Agricultural v. Parness Trucking, supra., and accords with our own sense of justice.

II. The Duty to Select a Financially Secure Insurer

The lack of a New Jersey case explicitly discussing the duty of a broker to use reasonable skill, care and diligence in selecting a financially secure insurer is undoubtedly explained by a recognition that the logic of Rider v. Lynch, supra, necessarily requires recognition of such a duty. The lack of case law is also explained by the existence of a well-recognized general rule holding brokers to such a standard.
The general rule is that an insurance agent or broker is not a guarantor of the financial condition or solvency of the company from which he obtains the insurance. However, he is required to use reasonable care, skill, and judgment with a view to the security or indemnity for which the insurance is sought, and a failure in such respect may render him liable to the insured for resulting losses due to the insolvency of the insurer. 43 Am.Jur.2d, Insurance § 143 (1982) at 228.
See also 3 Couch, Insurance 2d § 25:48. If Emar was negligent in selecting American Lloyds, it is liable to plaintiff for the resulting loss. See Weinisch v. Sawyer, 123 N.J. 333, 340, 587 A.2d 615 (1991).

*251 III. Conclusion

Defendant Emar's remaining contentions are without merit. Its reliance on Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 489 A.2d 660 (1984), misapprehends the fundamental issue in the case. We are concerned with whether the defendant had a duty to the named loss-payee such as could make it liable for a failure to use reasonable care, skill and judgment in placing the insurance with an insurer of sufficient financial strength to provide the indemnity for which the insurance was sought. In modern jurisprudence, such questions are not resolved by reference to differences between negligence and contract theories. See Eschle v. Eastern Freight Ways, supra; Impex Agricultural v. Parness Trucking, supra. The claims of waiver and laches were not considered below and cannot be resolved by us on this appeal.
It is clear that the matter was not ripe for summary judgment and the order granting Emar's motion must be reversed. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). For the same reason, plaintiff's appeal from the denial of its cross-motion for summary judgment requires an affirmance.
The order granting Emar's motion for summary judgment is reversed and the order denying plaintiff's motion for summary judgment is affirmed.
NOTES
[1] Judge Dreier, then sitting in the Law Division, took a similar position in Eschle v. Eastern Freight Ways, 128 N.J. Super. 299, 319 A.2d 786 (Law Div. 1974). Id. at 302, 319 A.2d 786.