263 N.J. Super. 445 (1993)
623 A.2d 257
AGNES BLACK, PLAINTIFF-APPELLANT,
v.
BOROUGH OF ATLANTIC HIGHLANDS (BODY POLITIC); MONMOUTH COUNTY BOARD OF CHOSEN FREEHOLDERS, (BODY POLITIC); MONMOUTH COUNTY SHADE TREE COMMISSION (BODY POLITIC); ATLANTIC HIGHLANDS SHADE TREE COMMISSION (BODY POLITIC); BOROUGH OF ATLANTIC HIGHLANDS DEPARTMENT OF ROADS (BODY POLITIC); ABC COMPANY; XYZ CORPORATION; JOHN DOE (FICTITIOUS NAMES); MR. AYMONIER; AYMONIER TREE SERVICE, AYMONIER TREE SERVICE, INC., DEFENDANTS-RESPONDENTS. BOROUGH OF ATLANTIC HIGHLANDS, DEFENDANT-THIRD PARTY PLAINTIFF,
v.
ANN M. POTTS AND LEON L. POTTS, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 1993.
Decided April 6, 1993.
*447 Before Judges KING, BRODY and LANDAU.
*448 Richard J. Mirra argued the cause for appellant (Boglioli, O'Mara, Reynolds & Mirra, attorneys; Mr. Mirra, on the brief).
Kenneth J. Potis argued the cause for respondent Borough of Atlantic Highlands (Carton, Witt, Arvanitis & Bariscillo, attorneys; Martin J. McGreevy, of counsel and Susan J.F. Weiss, on the brief).
Kevin T. Smith argued the cause for respondents Henri Aymonier, Aymonier Tree Service and Aymonier Tree Service, Inc. (Paul Seligman, attorney; Mr. Smith, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff Agnes Black was walking on her front lawn in Atlantic Highlands when she slipped and fell on rotting crab apples which had fallen from trees planted by the Borough of Atlantic Highlands (Borough), on the strip of land owned by the Borough which lies between its public street and Black's lawn. Black, who is seventy-two, was severely injured, suffering complications which ultimately led to a hip replacement.
She filed a complaint in the Law Division, seeking damages from the Borough and a number of other defendants, two of whom have previously been granted summary judgment, and two of whom have been dismissed by stipulation.
Following Black's amendment of the complaint to join defendants Henri Aymonier, Aymonier Tree Service, and Aymonier Tree Service, Inc. (collectively Aymonier), the Borough and Aymonier moved separately for summary judgments. The Borough's motion was granted on May 31, 1991 by one judge, and on February 27, 1992 summary judgment was granted to Aymonier by a different motion judge. Black appealed. Although a third party complaint has been instituted by the Borough, this appeal is not affected by that pleading.
*449 Our analysis leads to affirmance of the judgment for the Borough, but reversal as to Aymonier.
Black argues on appeal that material issues of fact exist which should have precluded both judgments. Aymonier says it breached no duty to plaintiff arising out of its performance or non-performance of an oral contract to "top" crab apple trees, and that its contribution to proximate causation was not adequately established.
The Borough relies upon asserted statutory grants of immunity under N.J.S.A. 40:64-14 and under the Tort Claims Act. It contends particularly that as only its independent Shade Tree Commission (now dismissed by stipulation) has been delegated responsibility for management of the trees from which crab apples fell upon the Black lawn, the Borough is entitled to the same statutory immunity afforded to its Shade Tree Commission by N.J.S.A. 40:64-14.[1]
For purposes of the summary judgment motions, the following facts may be deemed applicable:
(1) Black complained repeatedly, particularly since 1985 and a number of times immediately preceding the 1988 accident, that the Borough's crab apple trees which overhung her property were unpruned and were dropping large quantities of fruit onto her lawn and driveway, creating a hazardous and slippery walking condition.
(2) When pruned, the trees dropped very small amounts of fruit, but left unpruned, large amounts of rotting crab apples in the grass and on the driveway required Black's son-in-law to rake the lawn and hose down the driveway several times a week.
*450 (3) John Scott, the Chairman of the Shade Tree Commission established by the Borough, acknowledged Black's repeated calls and her complaints of a dangerous and messy condition caused by the crab apples.
(4) Scott contacted Aymonier, the contractor retained by the Shade Tree Commission, and took him to see the crab apple trees in question. Aymonier promised to prune them. In August, Scott set one deadline which was not honored by Aymonier; then set another deadline which was not honored. Following that, Scott again pressured Aymonier, who said, "I guarantee that we will get around to it before Labor Day."
(5) The trees were not pruned. On September 11, 1988, as she walked across her lawn, Black slipped on crab apples which had dropped from the trees, suffering severe injuries.
(6) The Shade Tree Commission was created under an ordinance passed in 1927. The Commission planted the trees on Scenic Court, where Black resides, about 40 years ago.
(7) Cropping and pruning of the crab apple trees would cut down the amount of falling fruit by almost 100%, according to Scott.
(8) After being informed by Scott of Black's fall, Aymonier pruned the subject trees immediately, "because he realized this was an emergency."
(9) In addition to notifying Scott, Black repeatedly called persons at the Borough Hall to make them aware of the dangerous condition caused by the crab apples.
Summary judgment was afforded to the Borough solely upon the basis of "the immunity extended to the Shade Tree Commission [by N.J.S.A. 40:64-14] which is the only public body of any kind that was involved in these activities." We note that the motion judge did not expressly consider applicability of the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3. There was no recognition, either, that Black's principal basis for asserting Borough liability was its ownership of the land upon which the fruit-laden *451 trees were situated, together with her repeated notices which made the Borough aware of the existence of a dangerous condition, and thus potentially responsible for the nuisance and its consequences.
In Birchwood Lakes Colony Club v. Medford Lakes, 90 N.J. 582, 449 A.2d 472 (1982), the Supreme Court pointed out that a public entity may be liable for an injury caused by a nuisance consisting of failure to act under circumstances in which the actor is under a duty to take positive action to prevent or to abate an invasion of a private party's interest in the use and enjoyment of its land. Birchwood Lakes at 591-592, 449 A.2d 472. The Court also recognized, however, that by reason of N.J.S.A. 59:4-2b, liability may not be so imposed, "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable."
We hold that summary judgment was correctly afforded to the Borough. We need not reach the question whether N.J.S.A. 40:64-14 provides immunity to the Borough.
In light of the extraordinary breadth of authority, expressed in terms of "exclusive control," granted to shade tree commissions under N.J.S.A. 40:64-5[2], it could not have been palpably unreasonable for the Borough to rely upon the method of performance chosen by its functioning Commission in this case.
Although the question of palpably unreasonable conduct is ordinarily one for the jury, Brown v. Brown, 86 N.J. 565, *452 580, 432 A.2d 493 (1981), this decision could not objectively be found "palpably unreasonable." Brown recognizes that the "palpably unreasonable" determination presents a jury question in the sense that it is no longer specifically assigned to the judge. However, the finding, like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented.
"Palpably unreasonable" has been defined as "behavior that is patently unacceptable under any circumstance." "[I]t must be manifest and obvious that no prudent person would approve of its course of action or inaction." Holloway v. State, 125 N.J. 386, 403-404, 593 A.2d 716 (1991).
We reject Black's argument that the failure to timely prune must be regarded as a purely "ministerial" action or inaction, and thus not immunized. N.J.S.A. 59:2-3(d). Even if the Borough had not created the Shade Tree Commission, but had dealt directly with Aymonier, retention of a private contractor and reliance upon his services would clearly be a policy decision. Once committed to the hands of the private contractor, its independently negligent ministerial omissions may not ordinarily be attributed to the public entity, consistent with N.J.S.A. 59:1-3, which excludes an independent contractor from the definition of "employee." See, Rodriguez v. N.J. Sports & Exposition Authority, 193 N.J. Super. 39, 472 A.2d 146 (1983), certif. den., 96 N.J. 291, 475 A.2d 586 (1984).
We note that, absent the statutory protections afforded to the Borough by reason of the Tort Claims Act and the broad exclusivity language in N.J.S.A. 40:64-5, the nuisance principles recognized in Birchwood Lakes could be found applicable to a dangerous condition caused by knowingly exposing adjoining landowners to hazards caused by objects falling from overhanging branches emanating from Borough property. This relatively unique New Jersey view set forth by Chief Justice Gummere in Ackerman v. Ellis, 81 N.J.L. 1, 79 A. 883 (Sup.Ct. 1911), has since been repeatedly recognized as a basis for an *453 award of damages. See, State, Department of Environmental Protection v. Ventron Corp., 94 N.J. 473, 490, 468 A.2d 150 (1983); D'Andrea v. Guglietta, 208 N.J. Super. 31, 34, 504 A.2d 1196 (App.Div. 1986). To ordinary landowners unprotected by statutory immunities, liability in tort to adjoining property owners may be established for damages proximately flowing from dangerous conditions caused by overhanging branches or matter dropping from trees which are not deemed "natural" when specifically planted for the purposes of the defendant landowner. Ackerman, supra. See also, Robert Roy, Annotation, Encroachment by Vegetation, 65 ALR 4th, 603, 627, 657 (1988). Thus, propriety of the summary judgment afforded to the Aymonier defendants must be considered in light of New Jersey authority holding that tort liability may arise from foreseeably dangerous conditions created by branches which overhang another's private property.
We consider, too, that summary judgment was granted to Aymonier under several factually mistaken assumptions. First, the motion judge concluded that even if negligent, Aymonier could not be shown to have contributed to proximate causation of Black's accident. He reasoned that the tree would have dropped crab apples even if topped and that it was not possible to tell whether Black fell on crab apples which came from a branch which should have been topped or from a lower branch. Scott's deposition testimony that the amount of falling fruit was reduced "almost 100%" by timely topping and pruning was thus ignored. Even if topping and pruning produced only a substantial reduction in fruit, a resulting inference of heightened risk contributing to causation is thereby presented and is sufficient to bar summary judgment.
Second, the motion judge found that there was no breach of contract by Aymonier in that it complied with his undertaking to top the trees in August and to give precedence to removal of dead trees. However, Scott's deposition also showed that Aymonier did not top the crab apple trees until notified of Black's *454 September 11 fall, at which time it was able to do the work immediately. Moreover, Scott said that Aymonier specifically promised to meet several August deadlines, and "guaranteed" that the trees would be pruned and topped by Labor Day. Thus the judge undertook on the motions to resolve two factual issues, inconsistently with evidence favorable to Black. These improper findings cannot support summary judgment for Aymonier.
Aymonier argues on appeal that it should be immunized as an "employee", but N.J.S.A. 59:1-3 (see infra, p. 452) puts that argument to rest. Nothing in the present record suggests an undisputed basis for derivative immunity. Compare, Vanchieri v. New Jersey Sports and Exposition, 104 N.J. 80, 86-87, 514 A.2d 1323 (1986); Rodriguez, supra, 193 N.J. Super. at 45, 472 A.2d 146.
Moreover, Aymonier is not insulated by absence of privity from its duties to Black. In Eschle v. Eastern Freight Ways, Inc., 128 N.J. Super. 299, 319 A.2d 786 (L.Div. 1974), Judge Dreier recognized that where an agreement has been made for the protection of the interests of third parties, and where this purpose is manifest, a legal duty may arise sufficient to sustain an action in negligence. Id. at 303, 319 A.2d 786, and authorities there cited. See also, Carter Lincoln-Mercury, Inc. v. Emar Group, Inc. and All Points Inc., 261 N.J. Super. 245, 618 A.2d 870 (App.Div. 1993). Later, in Rosenblum v. Adler, 93 N.J. 324, 336, 461 A.2d 138 (1983), the Supreme Court approvingly cited Gold Mills, Inc. v. Orbit Processing Corp., 121 N.J. Super. 370, 297 A.2d 203 (L.Div. 1972), quoting the following excerpt:
Such liability should exist when the contractor has undertaken performance, whether his negligent performance results from the doing of something which a reasonably prudent person would not have done or from the failure to do something which a reasonably prudent person would have done. So long as the privity rule is no longer viable in the area of tort liability there is no reason why a contractor should not have the same duties toward a stranger to the contract *455 as any member of society to another, i.e., to exercise due care to avoid injury to another's person or property.
Id. at 376, 297 A.2d 203.
Accepting the facts above enumerated for the purposes of the summary judgment motion, we hold that there was a sufficient factual showing to present a jury question of Aymonier's actionable and breach of non-immunized duty to Black, which breach reasonably could be found to have substantially contributed to causation of her injuries.
Accordingly, we affirm the summary judgment granted to the Borough of Atlantic Highlands, but reverse the grant of summary judgment to Aymonier and remand for further proceedings.
NOTES
[1] "Nothing in this chapter contained shall be construed to make any shade tree commission or any member thereof responsible for the death or injury of any person, or for an injury to any property or highway tree or shrub." N.J.S.A. 40:64-14.
[2] N.J.S.A. 40:64-5 provides in pertinent part:

A shade tree commission organized under this chapter shall have power to
a. Exercise full and exclusive control over the regulation, planting and care of shade and ornamental trees and shrubbery now located, or which may hereafter be planted in any public highway, park or parkway, except such as are excluded pursuant to section 40:64-1 of this Title in the municipality for which it was created, including the planting, trimming, spraying, care and protection thereof;
b. Regulate and control the use of the ground surrounding the same, so far as may be necessary for their proper growth, care and protection; ...