**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4148-16T1

JUSTINA CHOBOR and GEORGE
CHOBOR,

     Plaintiffs-Appellants,

v.

TOWNSHIP OF PARSIPPANY-TROY
HILLS,

     Defendant-Respondent.

_____

> Argued May 22, 2018 – Decided November 28, 2018
>
> Before Judges Yannotti and DeAlmeida.
>
> On appeal from Superior Court of New Jersey, Law Division, Morris County, Docket No. L-0865-15.
>
> Thomas D. Flinn argued the cause for appellants (Garrity, Graham, Murphy, Garofalo & Flinn, PC, attorneys; Thomas D. Flinn, of counsel and on the briefs).
>
> Vijayant Pawar argued the cause for respondent (Pawar Gilgallon & Rudy, LLC, attorneys; Vijayant Pawar, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiffs Justina and George Chobor appeal from an April 26, 2017 order of the Law Division granting summary judgment to The Township of Parsippany-Troy Hills (the Township). We affirm.

I.

The following facts are taken from the record. Plaintiffs own a home in the Township. In 2010, the owners of the parcel adjacent to plaintiffs' lot undertook tree removal, landscaping, and the installation of a retaining wall on their property. The grade of the adjoining property rises above plaintiffs' parcel. The construction included drainage pipes directed toward plaintiffs' property in the area of the retaining wall. After construction began, plaintiffs noted water flowing into and flooding their backyard.

On May 11, 2010, plaintiffs contacted the Township about the water flow. A day after the complaint was lodged, a Township employee, Paul McNeil, inspected plaintiffs' property. He determined that the neighboring property had regraded top soil with seed, and advised plaintiffs that when the area stabilized, the runoff should be ameliorated. Plaintiffs allege that McNeil tested the water for chlorine. A positive finding for chlorine indicates that the water's source is

A-4148-16T1

the Township's water main, which carries chlorinated water. According to plaintiffs, the water tested positive. Defendant denies McNeil tested the water on that visit. Township records contain no evidence of a chlorine test on that date. The parties agree that no steps were taken by the Township to address the water flow at that time.

Almost three years later, on January 3, 2013, plaintiffs again contacted the Township about water flowing on their property. The amount of water had increased to the point that plaintiffs, in order to prevent water intrusion into their basement, dug a trench to divert the water to the street curb in front of the property. The water was flowing at a sufficient rate to cause steady trickling at the curb.

On January 3, 2013, McNeil returned to plaintiffs' property. He observed the increased water flow through a wooded area and noted that some of the water was emanating from beneath the retaining wall on the neighboring property. He requested the Township Water Department investigate any possible leaks in water main pipes in the area of plaintiffs' property.

Later that day, William Richard Hoesly, the Township's Supervisor of Water Distribution, inspected plaintiffs' parcel and the adjoining lot, and tested the water trickling at plaintiffs' curb for chlorine. The test was negative. An

expert report in evidence contains the opinion that chlorine evaporates rapidly and, if water traveled a long distance through the ground from a public water main, it might test negative for the substance. Hoesly found no other evidence of a water main leak.

Five days later, on January 8, 2013, Hoesly returned to the property and conducted a second test for chlorine in the water flowing on plaintiffs' property. Again, the test results were negative. Hoesly also used listening devices to listen to nearby fire hydrants, copper services, and the nearby water main for evidence of flowing water. He shut off a gate in the water main and listened to the other gate for flowing water. He heard no evidence of flowing water.

More than a year later, on April 30, 2014, it rained heavily. The following day, plaintiffs contacted the Township and reported water running through their property and down their driveway at a high volume. George Chobor estimated that the volume of the water flow increased by approximately eighty percent over past experience. He asked that the Township again inspect the water flow.

On May 1, 2014, Justin Lizza, the Township Engineer, inspected plaintiffs' property and requested the Township Water Department test for leaks in the water main. On May 8, 2014, the Township Water Department performed a listening test on the water main under a street at a higher grade behind

plaintiffs' property. The test revealed two circumferential fractures in the water main pipe beneath the street above plaintiffs' property. On May 9, 2014, the Township opened the road and repaired the fractures. The water flow on plaintiffs' property stopped. A subsequent review of water consumption records indicated no unusual spikes in water consumption, which would be indicative of a water main leak, between plaintiffs' first complaint in May 2010 and the May 2014 discovery of the fractures in the water main.

On April 6, 2015, plaintiffs filed a complaint in the Law Division against the Township. Plaintiffs allege one count of negligence and one count of nuisance. They seek compensation for damage to a retaining wall and patio on their property from the water flow, and their loss of use and enjoyment of their property as a result of flooding.

After discovery, defendant moved for summary judgment on both counts. On April 26, 2017, the trial court granted defendant's motion. The trial court held that plaintiffs' claims are barred by the Tort Claims Act (TCA or the Act), N.J.S.A. 59:1-1 to 12-3. The court held that plaintiffs' negligence claim is barred by N.J.S.A. 59:2-6, which provides immunity to the Township for negligent inspections. In addition, the court held that plaintiffs' nuisance claim is barred by N.J.S.A. 59:4-2 because plaintiffs did not raise a genuine dispute of material

fact with respect to whether a dangerous condition existed on Township property, whether the Township was on notice of such a condition, or whether Township officials acted in a palpably unreasonable manner causing harm to plaintiffs. This appeal followed.

II.

We review the trial court's decision granting summary judgment de novo, using "the same standard that governs trial courts in reviewing summary judgment orders." Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998). Rule 4:46-2 provides that a court should grant summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." "Thus, the movant must show that there does not exist a 'genuine issue' as to a material fact and not simply one 'of an insubstantial nature'; a non-movant will be unsuccessful 'merely by pointing to any fact in dispute.'" Prudential, 307 N.J. Super. at 167.

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent

6

opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (citations omitted). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

Claims of negligence and nuisance against a public entity are governed by the TCA. Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 97-98 (1996) (citing Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes, 90 N.J. 582, 593 (1982)). The Act preserves the immunity of public bodies, except for the limited circumstances in which immunity is waived in the statute. Malloy v. State, 76 N.J. 515, 519 (1978); N.J.S.A. 59:1-2. Under the Act, "immunity from tort liability is the general rule and liability is the exception." Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998) (citation omitted); D.D. v. Univ. of Medicine and Dentistry of N.J., 213 N.J 130, 133-34 (2013). Generally, "a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." N.J.S.A. 59:2-1(a).

A-4148-16T1

We agree with the trial court's conclusion that plaintiffs' negligence claim is barred by the TCA. N.J.S.A. 59:2-6 provides that a

> public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property; provided, however, that nothing in this section shall exonerate a public entity from liability for negligence during the course of, but outside the scope of, any inspection conducted by it, nor shall this section exonerate a public entity from liability for failure to protect against a dangerous condition as provided in chapter 4.

Plaintiffs, in effect, allege that the Township employees who inspected their property and the water main on several occasions prior to May 2014 were negligent in not detecting the water main leak. Considering the record in the light most favorable to plaintiffs, and accepting as true plaintiffs' contention that the fractured water main was the cause of water flowing on their property as early as 2010, a fact not conceded by defendant, the most plaintiffs can establish is that Township employees should have conducted more complete or accurate inspections of the water main in 2010 and 2013. These claims fall squarely within the immunity established by N.J.S.A. 59:2-6.

In addition, the trial court correctly entered summary judgment on plaintiffs' nuisance claim because they did not establish that they suffered damages as the result of a dangerous condition on Township property, about

8

which the Township had notice but failed to act. In addition, the trial court correctly concluded that plaintiffs failed to establish that Township employees acted in a palpably unreasonable manner. The TCA allows for public-entity liability for a dangerous condition on public property if certain statutory criteria are met. N.J.S.A. 59:4-2. The Act provides that a

> public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
>
> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

The statutory "requirements are accretive; if one or more of the elements is not satisfied, a plaintiff's claim against a public entity alleging that such entity is

liable due to the condition of public property must fail." <u>Polzo v. Cty. of Essex</u>, 196 N.J. 569, 585 (2008). A nuisance claim against a public entity, as alleged by plaintiffs, is subject to N.J.S.A. 59:4-2. <u>Birchwood</u>, 90 N.J. at 593, 596.

We agree with the trial court's conclusion that there is no dispute of material fact in the motion record with respect to any of the critical elements of N.J.S.A. 59:4-2. Although the trial court considered whether the flowing water on plaintiffs' property was a dangerous condition under the statute, the plain language of the Act requires that to establish public entity liability, a dangerous condition must exist on public property. The alleged dangerous condition underlying plaintiffs' claims is the fractured water main on Township property. Plaintiffs produced no evidence that the water main was fractured in May 2010, or on the two occasions in 2013 on which plaintiffs complained of water flowing on their property. The only evidence in the record of a fracture existing in the water main is from the May 8, 2014 inspection by Township employees, who immediately cured the defect. Thus, to the extent that a dangerous condition existed on Township property in May 2014, it is undisputed that the Township promptly eliminated the dangerous condition after it was discovered by Township employees.

In addition, if the court were to assume that the water main was fractured, and therefore a dangerous condition existed, beginning in May 2010, as alleged by plaintiffs, the record contain no genuine issue of material fact with respect to whether a township employee caused the dangerous condition, or whether there was an absence of notice on the part of the Township of the dangerous condition on its property. Plaintiffs produced no evidence with respect to what caused the water main to fracture.

Nor did plaintiffs produce evidence that the Township was on notice of the cracks in the water main. According to N.J.S.A. 59:4-3:

> a. A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.
>
> b. A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of section 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

There is no evidence in the record that Township employees were actually aware of the fractures in the water main at any time prior to May 8, 2014. To the contrary, inspections by Township employees prior to that date resulted in

11

findings of no water main leak. Nor have plaintiffs produced undisputed evidence that Township employees had constructive notice of the fractured water main. The cause of the water flow on plaintiffs' property was not so obvious that, with the exercise of due care, it should have been discovered by the Township employees who responded to plaintiffs' complaints. Those employees followed protocol and tested for a water main leak. Those tests did not reveal the fractures in the water main. This amounted to an exercise of due care, which did not detect a dangerous condition on Township property.

Finally, plaintiffs produced no evidence creating a genuine issue of material fact with respect to whether the steps taken by the Township with respect to the water main fractures were palpably unreasonable. Although "palpably unreasonable" is not defined in the Act, it has been interpreted to mean "more than ordinary negligence, and imposes a steep burden on a plaintiff." Coyne v. State, Dep't of Transp., 182 N.J. 481, 493 (2005). "Palpably unreasonable" implies "behavior that is patently unacceptable under any circumstances" and "it must be manifest and obvious that no prudent person would approve of its course of action or inaction." Holloway v. State, 125 N.J. 386, 403-04 (1991) (citation omitted).

Here, it is undisputed that each time plaintiffs complained to the Township about water flowing on their property, a township employee promptly responded, inspected plaintiffs' property, and investigated the source of the water flow. The record indicates that Township employees followed protocol for complaints of this nature, and used available investigative techniques to detect a water main leak. These undisputed facts cannot reasonably be interpreted to constitute palpably unreasonable behavior, warranting summary judgment for the Township. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002); Black v. Borough of Atlantic Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION