**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0142-18T3

SUSAN SCHEPS and
STEPHEN SCHEPS,
husband and wife,

      Plaintiffs-Appellants,

v.

TOWNSHIP OF DELRAN

      Defendant-Respondent.

_____

           Submitted August 13, 2019 – Decided  August 23, 2019

           Before Judges Sumners and Moynihan.

           On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1942-16.

           Petrillo & Goldberg, PC, attorneys for appellant (Jeffrey M. Thiel, on the brief).

           Raymond, Coleman, Heinold, LLP, attorneys for respondent (Douglas L. Heinold and Stephen E. Raymond, on the brief).

PER CURIAM

In this New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, negligence lawsuit involving a trip and fall due to a pothole, plaintiffs Susan Scheps and Stephen Scheps[1] appeal from a Law Division order granting summary judgment to defendant Township of Delran (the Township) dismissing their complaint. Plaintiff contends that the evidence she submitted to the motion judge was sufficient to withstand summary judgment under the TCA. In particular, she argues the pothole was a dangerous condition that the Township had constructive notice of, but failed to repair because of its palpably unreasonable conduct. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm.

I

In considering the motion judge's order granting summary judgment, we detail the undisputed facts presented and consider them in the light most favorable to plaintiff, the party opposing summary judgment. See Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995)).

---

[1] Stephen Scheps, who filed a per quod claim, also appeals. Given that his claim is wholly derivative of his wife's, we therefore use the singular "plaintiff" throughout the balance of this opinion.

A-5269-17T4

On November 22, 2014, plaintiff and her husband went to visit their long-time friends, who lived on Fox Chase Drive in Delran. When they arrived around 8:00 p.m., her husband parked their car in front of their friend's home within a few feet of the curb. Upon leaving around 11:00 p.m., plaintiff was walking to the vehicle when she stepped into a pothole in the street and fell on her left shoulder. Eleven days later, she had surgery to mend a left shoulder fracture.

Over a month after the incident, on January 5, 2015, Jerry DeSanto, Supervisor of the Township's Department of Public Works, conducted an inspection of the street where plaintiff fell. When shown at his deposition a photograph he took of the pothole in question on February 6, DeSanto responded that it was the type of hole that normally should have been filled in by the Township. He noted that it would have taken only ten or fifteen minutes and "five bucks" to repair. He also said that he was not sure whether it would be correct to call the "hole" a pothole when it looked more like "some alligatoring . . . of the asphalt,"[2] or "a deteriorating street."

---

[2] DeSanto explained that "alligatoring" is "when an old road starts to break down, . . . it looks like an alligator's back where it just cracks and starts to crumble."

A-5269-17T4

DeSanto also explained that potholes never end as "they [are] popping back up" due to cold weather, especially in the winter. Although he said that no single pothole should remain unfixed for over a year once it has appeared, it was unclear whether the pothole in question was fixed and then re-appeared. Three or four times a year, public works employees repair potholes that they find as they circulate the Township, according to DeSanto.

Five months after the accident, on April 20, plaintiff's liability expert, Charles J. Penza, inspected the location where plaintiff tripped and fell. His report revealed that there was a "pothole" two inches below the street's surface, which began at thirty-six inches from the curb and extended forty-five inches from the curb. The pothole had a "broken and erratic asphalt edge result[ing] in an irregular and hazardous foot-landing surface." Penza also maintained that the pothole violated both the American Society of Testing Materials (ASTM) and New Jersey Department of Transportation's (NJDOT) roadway standards, which require roadways to remain flush and even with adjacent surfaces.

Additionally, Penza indicated that near the area of plaintiff's fall was a streetlamp with less than one foot-candle of illumination – a minimum amount of light at floor level required by most building codes – making it likely that plaintiff was unable to see the pothole. This supported plaintiff's deposition

4

testimony that she could not see what had caused her to fall. Penza also noted that there was no street sign prohibiting curbside parking. In sum, he opined within a reasonable degree of engineering probability that the kind of hole in question evolved over more than forty years.

The Township's records revealed that in the three years prior to the incident, twenty-two complaints of potholes on Fox Chase Drive were made. There were four complaints in 2012, five in 2013, and thirteen in 2014. In 2013, a woman broke her ankle on a pothole. In September 2014, another resident complained that the street was "breaking up" in front of her house due to potholes in the area. Prior to plaintiff's incident, no one, including plaintiff's friends, notified the Township of the pothole in question.

The Township made pothole repairs in 2014, including on Fox Chase Drive, but not to the particular hole in question. In addition, although Fox Chase Drive was on the Township's pothole repair list, there was no guarantee that the street would be repaired immediately, since, under the Township's Road Rehabilitation Program, specified roadways are ranked from most in need of repair to least, based on multiple factors by several agencies of the Township and selected by the Township Council. The factors considered are road usage, costs, availability of municipal funds and grant money, and public safety needs.

A-5269-17T4

In her complaint, plaintiff alleged that she fell due to the Township's negligence in creating dangerous conditions on a public roadway that were allowed to exist, and failing to inspect the roadway and warn her of the danger.

At the conclusion of discovery, the Township filed a motion for summary judgment based upon immunities under the TCA. The Township argued that plaintiff failed to prove that: (1) the pothole was a dangerous condition, N.J.S.A. 59:4-2; (2) the Township had actual or constructive notice of the dangerous condition, N.J.S.A. 59:4-4; and (3) the Township's conduct was not palpably unreasonable in failing to repair the pothole, N.J.S.A. 59:2-3(d).

On August 7, 2018, at the conclusion of argument, the motion judge entered an order and rendered her oral decision granting summary judgment. The judge determined that it was up to the jury to determine whether the pothole was a dangerous condition. The issue of whether the pothole was a dangerous condition, according to the judge, did not preclude summary judgment. The judge found there was no genuine dispute that the Township did not have actual notice of the pothole; no one had reported it to the Township prior to plaintiff's accident. The judge also found that the Township did not have constructive notice because receiving many complaints about potholes in the same street and

repairing them "[did not] create constructive notice of this particular condition of the road."

Moreover, relying on Polzo v. County of Essex (Polzo II), 209 N.J. 51 (2012), the judge determined there were several reasons why the actions of the Township in failing to repair the pothole were not palpably unreasonable. First, she reasoned the fact that Fox Chase Drive was on the repair list did not make the Township's failure to address the pothole in question palpably unreasonable because a public entity is not responsible for ensuring the safety of roadways for pedestrians' use, and "the municipal budget [did] not allow for every road to be repaired each year." The judge noted this was due to policy considerations that expanding public entities' liability would impose undue burden on them with limited resources, and that courts "do[] not have the authority or expertise to dictate to public entities the ideal form of road inspection program."

Second, the judge maintained that the failure to repair the pothole and violation of certain construction codes alone was not sufficient to make the Township's conduct palpably unreasonable because plaintiff's claims involve maintenance of roadway, not its construction. Third, the judge determined that DeSanto's testimony that the Township would have repaired the pothole if it had knowledge of the condition, did not make the Township's actions in not fixing

the pothole palpably unreasonable because it was not aware of the pothole. Fourth, the judge pointed out that a pedestrian must be prepared to encounter and watch out for obstructions in a roadway. Fifth, the judge explained that Penza's opinion that the pothole was a dangerous condition was "really limited" because his April inspection of the accident site occurred five months following the November accident and after the winter season had taken its toll on the roadway.

This appeal followed.

II

Plaintiff argues the motion judge erred in granting summary judgment. She contends the pothole that caused her to trip and fall constituted a dangerous condition under the TCA. For support, she points to Penza's expert opinion that the defect violated many national and state safety codes.

Plaintiff moreover asserts that there was a genuine issue of material fact as to whether the Township had constructive notice of the pothole in question based upon the twenty-two complaints to the Township about potholes, including thirteen reports in the year of the accident. Lodato v. Evesham Twp., 388 N.J. Super. 501, 512 (App. Div. 2006) (holding there was constructive notice where other individuals in the immediate vicinity had removed trees

causing a similar condition to a sidewalk in which plaintiff sustained injury after tripping over sidewalk raised by a tree root); see also Roman v. City of Plainfield, 388 N.J. Super 527, 532, 539 (App. Div. 2006), (ruling the fact that there had been numerous occasions where trees were uplifted due to the similar problem supports the existence of constructive notice of the defect). Plaintiff also asserts that the Township's knowledge of prior poor conditions on Fox Chase Drive – a woman sustained a broken ankle injury after stepping into a pothole in 2013 and a resident's complaint two months before her accident that the street was breaking up in front of her house due to potholes – provides proof that the Township had constructive notice. Further, plaintiff argues the Google Street View taken fourteen months before her accident shows the pothole, and Penza's analysis that the hole would have developed over forty years, support the existence of the Township's constructive notice.

Finally, plaintiff argues there is a genuine dispute of material fact as to whether the Township's failure to repair the subject pothole was palpably unreasonable because it would cost only "five bucks" to fill. She also asserts that the prior complaints about potholes on Fox Chase Drive, the two prior incidents concerning potholes and DeSanto's testimony that the hole should have

9

been filled, support the conclusion that the Township's failure was palpably unreasonable.

We review a ruling on a summary judgment motion de novo, applying the same standard governing the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Thus, we consider, as the motion judge did, "whether 'the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Holmes v. Jersey City Police Dep't, 449 N.J. Super. 600, 602-03 (App. Div. 2017) (citation omitted). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Brill, 142 N.J. at 540). We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Applying these standards and the provisions of the TCA discussed below, we affirm substantially for the reasons stated by the motion judge in her cogent oral decision that plaintiff failed to establish the Township had actual or

10

constructive notice of the pothole that allegedly caused her fall. We add the following comments.

"Potholes and depressions are a common feature of our roadways. However, 'not every defect in a highway, even if caused by negligent maintenance, is actionable.'" Polzo II, 209 N.J. at 64 (quoting Polyard v. Terry, 160 N.J. Super. 497, 508 (App. Div. 1978)). In order to recover for an injury caused by such defects, a plaintiff must prove all of the criteria of the TCA. See id. at 66.

Under the TCA, "immunity from tort liability is the general rule [for a public entity] and liability is the exception." Polzo v. Cty. of Essex (Polzo I), 196 N.J. 569, 578 (2008) (citations omitted). It states in relevant part that a public entity may be held liable for an injury sustained that was proximately caused by a dangerous condition on a public property. N.J.S.A. 59:4-2. Liability will be found if "a public entity had actual or constructive notice of the dangerous condition under [N.J.S.A.] 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." N.J.S.A. 59:4-2(b). "A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a).

11

"A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character."

[N.J.S.A. 59:4-3(b).]

"Whether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set forth in N.J.S.A. 59:4-3(a) and (b), not by whether [for example] 'a routine inspection program' by the [public entity] . . . would have discovered the condition." Polzo II, 209 N.J. at 68.

Here, plaintiff did not "show, even under the indulgent summary-judgment standard of review, that the . . . [pothole] 'was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.'" Id. at 75 (quoting N.J.S.A. 59:4-3(b)). Plaintiff's reliance on Penza's inspection five months after the accident, a history of complaints to the Township, and its history of pothole repairs pertaining only to the surrounding area established neither actual nor constructive notice of the pothole that caused plaintiff's accident. Plaintiff has presented no competent evidence as to the length of time that pothole existed. Penza's opinion that the pothole "evolved over forty years" is not a testament to

12

when the depression manifested itself to such a condition that it was a dangerous condition and that the Township knew or should have known the pothole needed to be repaired.

Nothing in the summary judgment record suggests that any complaints or accidents concerning the pothole in front of plaintiff's friend's home were ever reported to the Township. Consequently, we are convinced that no reasonable jury could have concluded that the Township had actual or constructive notice of the pothole in a sufficient time prior to plaintiff's injury to have taken measures to protect against it.

Given our conclusion that the Township did not have actual or constructive notice of the pothole that caused plaintiff's accident, the Township's failure to repair it cannot be viewed as palpably unreasonable under the TCA. "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). It therefore follows that absent actual or constructive notice, the public entity cannot have acted in a palpably unreasonable manner. See Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002).

Yet, even if we conclude that there was actual or constructive notice of the pothole, plaintiff has not presented any facts that show the Township's conduct was palpably unreasonable.  Apart from proof of notice, to establish liability against a public entity under N.J.S.A. 59:4-2, a plaintiff must establish a prima facie case that the action or inaction of the public entity was "palpably unreasonable."  Coyne v. Dep't of Transp., 182 N.J. 481, 493 (2005); Maslo, 346 N.J. Super. at 349.  Similarly, N.J.S.A. 59:2-3(d) provides,

> A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable.

"[The] subsection incorporates the thesis that once resources have been provided a public entity may be liable for its determination of priorities in the application of such resources if that determination is palpably unreasonable."  Margolis & Novack, Claims Against Public Entities, 1972 Task Force Comment on N.J.S.A. 59:2-3(d).  "Broadly speaking [N.J.S.A.] 59:2-3 provides that there shall be no liability for the decision-making process of public entities."  Id. at cmt. 1 on N.J.S.A. 59:2-3.

The term "palpably unreasonable" implies "behavior that is patently unacceptable under any given circumstance." Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003) (citations omitted); see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (to constitute "palpably unreasonable" conduct, "it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction."). Whether the public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 130 (2001). However, a determination of palpable unreasonableness, "like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the circumstances presented." Maslo, 346 N.J. Super. at 351 (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Id. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998)).

The record in this case convinces us that as a matter of law the Township's actions pertaining to the failure to repair the pothole was not palpably unreasonable. There is no dispute that the Township's inspection of its public streets was a discretionary activity. Given the limited resources of

15

municipalities, it is not within our power to impose a more comprehensive pothole inspection and repair program on the Township. See Polzo II, 209 N.J. at 69.

Palpably unreasonable conduct "implies a more obvious and manifest breach of duty" than negligence "and imposes a more onerous burden on the plaintiff." Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979). There was no reported problem of a pothole in front of plaintiff's friends' home. The program the Township had in place was not unreasonable. Under these circumstances, no rational factfinder could find that it was palpably unreasonable for the Township not to have repaired the pothole that caused plaintiff's unfortunate injury.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5269-17T4