815 A.2d 988

MICHAEL KEPLER AND BRYAN KEPLER, PLAINTIFFS, v. TAYLOR MILLS DEVELOPERS, INC., AND/OR N.C.V. DEVELOPERS, INC., TAYLOR MILLS ESTATE, INC., IGUANA BEACH CLUB, INC., TAYLOR'S CORP., MILKBAR, DEFENDANTS–CROSS–CLAIMANTS, APPELLANTS, v. GARDEN STATE RACE TRACK, INC., GARDEN STATE RACING ASSOCIATION LIQUIDATION TRUST, CHERRY HILL TOWNSHIP POLICE DEPARTMENT, TOWNSHIP OF CHERRY HILL, ANDREA LEONE AND ANDREW STEWART, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 20, 2002—Decided January 28, 2003.

Before Judges NEWMAN,[1] PARRILLO and LANDAU.

*John W. Jones* argued the cause for appellants *Taylor Mills Developers, Inc., Taylor Mills Estate, Inc., Iguana Beach Club, Inc., Taylor's Corp. and Milkbar* (*Mr. Jones,* on the brief).

---

[1] Judge Newman did not participate in the argument of this case. He has been added with consent of all counsel.

*Barbara J. Davis* argued the cause for respondents *Garden State Race-track, Inc. and Garden State Racing Association Liquidation Trust* (*Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Ms. Davis,* on the brief).

*John C. Eastlack, Jr.* argued the cause for respondents *Township of Cherry Hill, Cherry Hill Police Department, Andrea Leone and Andrew Stewart* (*Poplar & Eastlack,* attorneys; *David E. Poplar,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D., retired and temporarily assigned on recall.

This is an appeal by defendants-cross-claimants, who are together denominated herein as "the Club," from grants of summary judgment to the co-defendants denominated herein as "Cherry Hill" and "Garden State",[2] on the Club's cross-claims in an action commenced by plaintiffs Michael Kepler and Bryan Kepler. Summary judgments were granted to Cherry Hill and Garden State against the plaintiffs, who have since settled with the Club and have not appealed from those judgments.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiffs were patrons at a Cherry Hill nightclub known as the Iguana Beach Club during the early morning hours of April 12, 1997. They had parked in an area on premises of defendant Garden State, located three to four hundred yards from the Club, that served as an additional parking facility pursuant to a license

---

[2] For purposes of this opinion and to better achieve clarity, the numerous defendants are included within three designated common-interest groupings: A. Defendants Taylors Mill Developers, Inc.; NLV Developers, Inc.; CV Developers, Inc.; Taylors Mills Estates, Inc.; Iguana Beach Club, Inc.; Venus Lounge, Inc.; Taylors' Corp.; and Milk Bar are together referred to as the "Club." B. Defendants Garden State Racetrack, Inc., and Garden State Racing Association Liquidation Trust are included within the designation "Garden State." C. The designation "Cherry Hill" includes defendants Cherry Hill Township, Cherry Hill Township Police Department, and Officers Leone and Stewart.

agreement between the Club and Garden State. The license provided for monthly payments to Garden State by the Club, in return for which Club patrons were permitted to use that parking lot. Garden State agreed to keep the lot illuminated from dusk until 4:00 A.M. The Club agreed to indemnify Garden State against claims arising out of use of the lot by its patrons.

Plaintiffs were injured when a conversation they were having with several other men turned into an argument and then erupted into a fight that resulted in the complained-of injuries. The incident occurred at the Garden State parking area as plaintiffs were returning to their car. Plaintiffs said it began and ended in a very short period of time; "real short," "maybe a minute."

The Club had an arrangement with the Police Department of Cherry Hill Township (the Department) for the posting of a security detail, usually consisting of two officers [3] "at The Iguana Beach Club," generally for about four hours during late night and early morning periods on most days of the week. Indoor security was maintained by the Club. The Club reimbursed the Department, which paid the assigned officers' respective overtime charges as reflected in a letter from the Department to the Club. Officers' participation was voluntary, and assignments to the Club detail were made by the Department pursuant to a rotating schedule of officers interested in such overtime duty.

The officers' presence was ordinarily established in a marked patrol car outside of the Club, although there was testimony that a closing sweep of the Garden State lot was made by some officers at the end of a tour. Two Club employees certified that they "understood" that the Cherry Hill Police Department provided security for the entire parking area, inclusive of the Garden State lot, and not just the front of the Club.

Defendants, Officers Leone and Stewart, were detailed to the Club on April 12, 1997. They responded immediately in their

---

[3] On special occasions such as "Teen Night" preceding a school holiday, the parties informally agreed that a larger security detail would be assigned.

patrol car to the Garden State lot upon receiving a police radio call respecting the subject incident. Other Cherry Hill officers and an ambulance responded shortly thereafter.

Plaintiffs' amended complaint joined the Club defendants, the Garden State defendants, and the Cherry Hill defendants, alleging various breaches of duty. The Club cross-claimed against Garden State and Cherry Hill, alleging not only breaches of duty but, as to Cherry Hill, a breach of the "agreement" between its Police Department and the Club.

On Garden State's motion, summary judgment in its favor was entered on March 2, 2001, dismissing with prejudice plaintiffs' complaint and any and all cross-claims. On May 30, 2001, an order was entered granting summary judgment to the Cherry Hill defendants and dismissing plaintiffs' complaint against them. While there was no specific mention of the Club's cross-claim, the briefs demonstrate that all defendants contemplated that the order also had the effect of dismissing the Club's cross-claim against Cherry Hill. Only the Club appealed.

We scheduled a telephonic conference-argument among the parties and the court, during which counsel for the Club and Cherry Hill, as well as Garden State, stipulated that the Cherry Hill order be regarded as dismissing the Club's cross-claim. This enabled us to decide the appeal as taken from a final determination, rather than subjecting the parties to a costly corrective remand. Finality of the orders had been assumed by the parties after the stipulation of settlement between plaintiffs and the Club was entered into on December 27, 2001. Although that settlement was subject to the terms of an installment payout, counsel have represented to the court that payment has been completed, removing any further question respecting finality of the judgments.

As plaintiffs have not appealed, only the Club's appeal from the judgments rejecting its cross-claims is before us for review.

For the reasons set forth below, we affirm, both as to Garden State and Cherry Hill.

## I. GARDEN STATE

The Club's cross-claim against Garden State is primarily grounded in the assertion that Garden State failed to maintain premises reasonably safe for business invitees because it failed to properly illuminate the lot. As the motion judge observed, however, factual support was lacking for the complaint's allegation that the area was unlit, or that inadequate lighting was causally linked to the fight in which plaintiffs suffered injury. Plaintiffs said in discovery that they had no difficulty seeing the persons with whom they engaged in the altercation. The resulting injuries had nothing to do with the presence or absence of light. Moreover, the duration of the dispute as testified to by plaintiffs in discovery was so brief as to negate any effect of lighting upon the ability of the security guards or others to prevent its occurrence. There was neither proof of a breach of duty owed by Garden State nor of proximate causation sufficient to submit the cross-claim against Garden State to a fact-finder under *Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 666 *A.*2d 146 (1995).

Finally, the record discloses that the Club agreed to hold harmless Garden State from liability arising out of its grant of the parking license.

Accordingly, we affirm the judgment for Garden State.

## II. CHERRY HILL

The motion judge concluded that a letter from the Cherry Hill Police Department regarding payment of its bills for reimbursement of the overtime payments to officers assigned to the "security detail at The Iguana Beach Club" was sufficient to reflect existence of an agreement. The judge concluded, however, that the record reflected nothing to support the existence of an obligation to "extend the geographical scope of the security detail beyond the premises of The Iguana Beach Club ..." and that as a matter of law, "the contract did not extend an obligation to provide a security detail on the Garden State lot." The judge also

found that there was "no factual basis to support any claim of proximate cause [of the plaintiffs' injuries]." Although he declined to reach the Tort Claims Act immunity defense raised by Cherry Hill, we hold that defense to be alone sufficient to warrant summary judgment.

To be sure, we agree with the judge's rejection of any contractual obligation by Cherry Hill to provide a detail to patrol the remote Garden State parking area at the Garden State site. Moreover, it is not disputed that the two officers on duty, Kelly Leone and Andrew Stewart, were first to respond to the scene of the incident. Both plaintiffs acknowledged that two police officers were on duty in front of the Club when they left the premises. Thus, there was a security detail posted at the Club. We discern no sufficient factual basis for finding either a breach of duty or a breach of the agreement to provide security at the Club.

The judge also correctly rejected as hearsay the third party certifications from Club employees reflecting their "understanding" of the scope of the Cherry Hill undertaking. These were also inadmissible as opinions. In any event, they could not substitute for the court's interpretation of the agreement as a matter of law.

Moreover, given the brevity of the altercation, there was no basis to link the officers on duty at the Club or the other Cherry Hill defendants to causation of plaintiffs' injuries.

In short, we do not differ with the judge's reasons for rejecting both contractual and tort bases for Cherry Hill liability. We emphasize, however, that the Tort Claims Act defenses of immunity under *N.J.S.A.* 59:2–1 and 59:5–4 raised by Cherry Hill are primarily dispositive in this case. *N.J.S.A.* 59:2–1(a) provides:

a. Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

*N.J.S.A.* 59:5–4 provides:

Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.

■ We have held that the latter section should be construed as conferring a "broad" immunity. *Rodriguez v. N.J. Sports and Exposition Auth.*, 193 *N.J.Super.* 39, 43, 472 *A.*2d 146 (App.Div. 1983), *certif. denied*, 96 *N.J.* 291, 475 *A.*2d 586 (1984). Further, public entities are not liable for failure to protect against the criminal propensity of third persons. *Wuethrich v. Delia*, 155 *N.J.Super.* 324, 326, 382 *A.*2d 929 (App.Div.), *certif. denied*, 77 *N.J.* 486, 391 *A.*2d 500 (1978).

These immunities, so stoutly re-established by the Legislature, cannot be thwarted or waived other than by a legislative enactment of equal dignity. Here, Cherry Hill accommodated the Club's desire for a visible police presence during specified late evening and early morning hours, but the arrangement did not and does not alter its fundamental character as the provision of "police protection service." As noted above, plaintiffs themselves confirmed the presence of the police officers at the Club site, and those officers, surely not coincidentally, were first to respond to the Garden State parking lot site. *N.J.S.A.* 59:5–4 insulates the public entity and its employees from liability both from the failure to provide and for failure to provide sufficient police service. The immunity provided was not altered, expressly or impliedly, by the letter outlining the parties' agreement as to reimbursement of Cherry Hill's overtime costs.

Indeed, local police or municipal officials could not lawfully have agreed to abrogate the legislatively conferred immunity even had the limited "agreement" purported to do so, which it did not.

We hold that the Tort Claims Act provisions cited above provide immunity to the Cherry Hill defendants. Both independently and concurrently with the conclusions of the motion judge, Tort Claims Act immunity provides a firm basis for granting summary judgment to the Cherry Hill defendants on the Club's cross-claim.

## CONCLUSION

As modified pursuant to stipulation, the judgments below are affirmed.