**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3444-19

JANE D'ALESSIO and
NICHOLAS D'ALESSIO,

      Plaintiffs-Appellants,

v.

COMMISSIONER OF FIRE
DISTRICT #2, PORT READING
FIRE DEPARTMENT #2 and
TOWNSHIP OF WOODBRIDGE,[1]

      Defendants-Respondents.

_____

Submitted March 8, 2021 – Decided March 29, 2021

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6382-18.

Joseph P. Schiappa, attorney for appellants.

---

[1] Defendant Port Reading Fire District #2 was improperly pleaded as Port Reading Fire Department #2. In January 2018, plaintiffs executed a stipulation of dismissal with prejudice as to their claims against defendants Commissioner of Fire District #2 and the Township of Woodbridge.

James P. Nolan and Associates, LLC, attorneys for respondents (Brian A. Bontempo, on the brief).

PER CURIAM

Plaintiffs Jane D'Alessio and her husband Nicholas D'Alessio[2] appeal from a March 13, 2020 order granting summary judgment to defendant Port Reading Fire District #2 and dismissing their claims with prejudice. In addition, plaintiffs appeal from an April 24, 2020 order denying their motion for reconsideration. Because there are disputed issues of material fact relevant to the application of immunity to a public entity under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, we reverse and remand.

On February 25, 2017, plaintiff attended her grandchild's birthday party at defendant's firehouse. At approximately 5 o'clock in the evening, while on her way to the women's bathroom, plaintiff's foot caught on the marble saddle separating the wood floor in the hallway and the tile floor in the bathroom. Plaintiff tripped and fell onto the bathroom floor. At the time, plaintiff was wearing soft toe shoes. As a result of the fall, plaintiff suffered serious injury to her forehead, right arm, and right shoulder, and required shoulder replacement

---

[2] Nicholas D'Alessio's claim for loss of consortium is derivative of his wife's personal injury claims. We use plaintiff to refer to Jane D'Alessio and plaintiffs to refer to both Jane and Nicholas D'Alessio.

surgery. Following surgery, plaintiff continued to suffer lingering effects attributable to her fall.

Plaintiffs' daughter took photographs of the saddle immediately after her mother fell. According to plaintiffs, the photographs showed the following dangerous conditions: (1) a height differential between the wood flooring in the hallway and the marble saddle[3] and (2) cracks in the worn saddle, causing the middle piece of the saddle to become loose and removable. Three witnesses, plaintiff, plaintiffs' daughter, and plaintiff's friend, described the condition of the saddle on the day of plaintiff's fall.

Plaintiffs retained James Kennedy, a professional engineer, as their liability expert. Kennedy opined the height differential between the hallway floor and the saddle was 13/16" based on measurements taken from the saddle leading into the men's bathroom room.[4] According to Kennedy, this height

---

[3] In 2016, defendant renovated the hallway flooring but did not replace the bathroom saddle. According to plaintiffs' expert, this created the height differential between floor and the saddle, causing plaintiff's fall.

[4] Several months after plaintiff fell, defendant replaced the saddle leading into the women's bathroom. As a result, the original saddle was unavailable for inspection by plaintiffs' expert. However, based on the photographs taken by plaintiffs' daughter contemporaneous with her mother's fall, plaintiffs' expert concluded the saddle that had been in the women's bathroom matched the saddle remaining in the men's bathroom.

differential failed to conform with the International Code Council/American National Standard Institute (ICC/ANSI) standards, New Jersey Uniform Construction Code, and ASTM International Standard Practice. Plaintiffs' expert concluded, "The failure of the defendant . . . to provide and maintain a reasonably safe premise in accordance with adopted codes and accepted safety standards, caused [plaintiff] to fall and sustain injury."

Defendant produced a safety checklist based on inspections conducted at the firehouse on a "monthly/bimonthly" basis. The inspection performed approximately a month prior to plaintiff's fall did not indicate whether the saddle to the women's bathroom was examined.

In October 2018, plaintiffs filed a complaint alleging defendant's carelessness and negligence caused plaintiff's injuries. Defendant filed an answer, and the parties exchanged discovery.

After completing discovery, defendant moved for summary judgment based on TCA immunity. Plaintiffs filed opposition and the motion judge heard counsels' arguments on March 13, 2020.

In a ruling from the bench, the judge granted defendant's motion. He determined plaintiffs failed to demonstrate liability sufficient to overcome the immunity granted to defendant under the TCA. The judge concluded plaintiffs

4

offered no evidence establishing the existence of a dangerous condition. He also held plaintiffs were unable to demonstrate defendant's had actual or constructive notice of a dangerous condition or that defendant's conduct in failing to repair the condition was palpably unreasonable.

On the absence of a dangerous condition, the judge accepted defendant's facts rather than viewing the facts in the light most favorable to plaintiffs. The judge concluded "the height differential of a half inch or three-quarters of an inch cannot be categorized as a dangerous condition to trigger liability" despite the contrary opinion offered by plaintiffs' expert.

Regarding notice of a dangerous condition, again the judge accepted defendant's facts despite the evidence proffered by plaintiffs in opposition to the summary judgment motion. The judge held plaintiffs presented no proof of defendant's notice, either actual or constructive, of the saddle's dangerous condition. He found no evidence of a dangerous condition "exist[ing] for such a period of time that [defendant,] in the exercise of due care, should have discovered the condition and its dangerous character."

The judge also held plaintiffs failed to demonstrate defendant's conduct was palpably unreasonable. He found there was no evidence of any prior complaints or reports related to the condition of the saddle. Further, based on

5

plaintiff's prior visits to defendant's firehouse, the judge determined plaintiff would have seen a dangerous condition had it existed prior to the date of her fall.

In rendering his decision, the judge explained "plaintiff is required to establish every element in order for the defendant public entit[y] to be found liable. And if the plaintiff failed to satisfy any of the three elements, the plaintiffs' claim must fail as a matter of law." The judge stated, "from the motion record there isn't any evidence, at least from what the [c]ourt reviewed, that the saddle constituted a dangerous condition prior to the slip and fall at issue here." Relying on defendant's safety checklist completed about one month prior to plaintiff's fall, the judge explained, "[the] safety checklist makes no mention of any trip hazards in the building or on the grounds."

Based on plaintiff's deposition testimony, the judge noted plaintiff "never observed any problems with the woman's restroom saddle" despite plaintiff having attended events at defendant's firehouse on several prior occasions. He remarked plaintiffs took no depositions of defendant's representatives "to establish that there were prior issues or reports that the saddle was loose or broken prior to the incident." The judge further explained that, even assuming fact issues regarding the existence of a dangerous condition and defendant's

6

actual or constructive notice of such a dangerous condition, "the [c]ourt's decision here that the alleged action or inaction of the defendants not to replace the saddle does not meet the definition of 'palpably unreasonable' . . . under the statute." He concluded, "the failure to . . . meet [the palpably unreasonable] element, if not one or two of the others, but at least the failure to meet that third element does warrant the entry of summary judgment as a matter of law in favor of defendants."

Plaintiffs filed a motion for reconsideration. In an April 24, 2020 order and accompanying written statement of reasons, the judge denied the motion and restated his prior factual findings and legal conclusions. He reiterated plaintiffs "failed to present any evidence whatsoever to prove that a dangerous condition existed before the [p]laintiff[']s[] accident."

In denying plaintiffs' reconsideration motion, the judge explained "[t]he photographs, affidavits and other evidence provided by [p]laintiffs document the condition of the bathroom saddle *after* plaintiff . . . struck it with her foot." The judge stated the photographs offered as evidence in opposition to summary judgment were taken by plaintiffs' daughter "some *nine months after* the subject accident purporting to show a broken door saddle with a crack line and chips on

A-3444-19

the surface."[5] The judge noted he considered "all the evidence in the motion record . . . and viewed it in the light most favorable to plaintiffs . . . ." prior to granting defendant's summary judgment motion.

On appeal, plaintiffs argue the motion judge erred in granting defendant's motion for summary judgment because there were material disputed facts regarding the dangerous condition of the women's bathroom saddle and defendant's notice of the dangerous condition such that defendant's conduct was palpably unreasonable. We agree.

When reviewing an order granting or denying summary judgment, we apply the standard under Rule 4:46-2(c) the same as applied by the trial court when considering a summary judgment motion. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment should be granted when the motion evidence before the

---

[5] In reviewing the record, plaintiffs' interrogatory responses attached three photographs of the women's bathroom saddle "taken on February 25, 2017," which is the date plaintiff fell. Plaintiffs' daughter filed a certification stating she used her cellphone to take photographs of the saddle immediately after her mother's fall. Plaintiff's friend also filed a certification in opposition to summary judgment, noting her observation of the broken saddle on the day plaintiff fell. Other photographs attached to plaintiffs' interrogatory responses were taken by plaintiffs' daughter in November 2017. This may explain the judge's statement that plaintiffs' photographs were taken nine months after the incident.

A-3444-19

court "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The trial court must first determine whether there is a genuine issue of fact. Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987). The motion judge is required to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). In addition, the motion judge shall review the facts in the light most favorable to the party opposing summary judgment. Globe Motor Co., 225 N.J. at 479.

The fundamental principles embodied in the TCA include the notion that governmental immunity is the rule unless the TCA itself creates an exception. Kepler v. Taylor Mills Developers, Inc., 357 N.J. Super. 446, 453 (App. Div. 2003). In enacting the TCA, "[t]he Legislature had 'rejected the concept of a statute that imposed liability with specific exceptions . . . . [Instead], public entities are immune from liability unless they are declared to be liable by enactment.'" Macaluso v. Knowles, 341 N.J. Super. 112, 117 (App.

Div. 2001) (second and third alterations in original). See also Maison v. N.J. Transit Corp., __ N.J. __ , __ (2021) (slip op. at 23-25).

N.J.S.A. 59:4-2 provides a public entity is liable if a plaintiff establishes: (1) the public "property was in [a] dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition; or . . . a public entity had actual or constructive notice . . . of the dangerous condition . . . ." Additionally, a public entity is not liable "for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." Ibid. A plaintiff must prove the public entity's action or inaction was palpably unreasonable. Coyne v. N.J. Dept. of Transp., 182 N.J. 481, 493 (2005).

The TCA defines "dangerous condition" as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). "[T]he critical question . . . is whether a reasonable factfinder could have concluded that plaintiff demonstrated that the property was in a 'dangerous

10

condition.'" Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124 (2001) (citing Daniel v. N.J. Dep't of Transp., 239 N.J. Super. 563, 573 (App. Div. 1990)).

On this record, we are satisfied there were genuine material disputed facts regarding the existence of a dangerous condition, defendant's notice of the condition, and defendant's conduct regarding the condition to preclude the entry of summary judgment as a matter of law.

"[U]nder [our] indulgent summary-judgment standard of review," requiring the record to be viewed in the light most favorable to plaintiffs, we disagree plaintiffs failed to present evidence of a dangerous condition. Polzo v. Cty. of Essex, 209 N.J. 51, 75 (2012). Although plaintiffs' evidence is subject to challenge on credibility grounds, for the purpose of summary judgment, we must accord plaintiffs every favorable inference. Here, plaintiffs submitted certifications signed by plaintiff, plaintiffs' daughter, and plaintiff's friend regarding the condition of the women's bathroom saddle on the date of plaintiff's fall. The three women described the saddle as deteriorated, worn, and cracked, and observed the middle section of the saddle was loose and removable. The observations of these witnesses, and the photographs taken contemporaneous with the incident, created a material disputed fact regarding

the existence of a dangerous condition. Further, plaintiffs' expert and defendant's expert agreed the saddle's threshold measured 13/16" higher than the flooring in the hallway. Based on these facts, whether the women's bathroom saddle constituted a dangerous condition should have been presented to a jury for resolution. We are satisfied plaintiffs have shown a reasonable jury could find a dangerous condition to overcome immunity under the TCA.

In addition, if plaintiffs prove a dangerous condition existed at the time of the accident, we are persuaded a jury could similarly conclude the dangerous condition was the proximate cause of the accident and created a reasonably foreseeable risk of the kind of injuries sustained. See Daniel, 239 N.J. Super. at 595 (quoting Polyard v. Terry, 160 N.J. Super. 497, 511 (App. Div. 1978)) ("Proximate cause is 'any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred.'"). Defendant will have an opportunity at trial to present evidence that plaintiff kicked the saddle with her shoe while entering the women's bathroom, causing the saddle to crack and creating a superseding factor leading her to fall. A jury must resolve the proximate cause question whether the dangerous condition created a reasonably

foreseeable risk that plaintiff would trip over a worn, cracked, and loose saddle and suffer resulting injuries.

As to notice of the dangerous condition, plaintiffs asserted defendant had constructive notice of the saddle's condition prior to the accident because the saddle was worn, chipped, and cracked at the time of plaintiff's fall. Constructive notice of a dangerous condition occurs "if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b). "A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factor Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). "Constructive notice can be inferred in various ways," including "characteristics of the dangers giving rise to the slip and fall or eyewitness testimony . . . ." Ibid. (citations omitted).

Here, the motion judge opined defendant did not have constructive notice because there were no prior reports or complaints regarding the saddle. In

addition, he concluded plaintiff failed to prove a dangerous condition existed before the accident. However, plaintiffs proffered evidence the deteriorated and worn condition of the saddle existed for a sufficient time period that defendant knew or should have known the condition was dangerous. In addition, plaintiff presented evidence she was wearing soft toe shoes at the time and her shoes could not have caused a marble saddle to crack and break. Moreover, if defendant regularly inspected the firehouse, the height differential between the flooring and the saddle may have been open and obvious enough for defendant to have discovered the dangerous condition in the exercise of due care.

These fact issues should not have been evaluated and resolved by the motion judge. A jury should assess the credibility of plaintiffs' witnesses regarding the condition of the saddle on the day of the accident and weigh that testimony against any defense evidence or witnesses related to the condition of the saddle. Based on the evidence, the jury will determine if, in the exercise of due care, defendant "should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b).

We next consider plaintiffs' evidence that defendant's conduct was palpably unreasonable to impose liability under the TCA. See Coyne, 182 N.J. at 493; N.J.S.A. 59:4-2. Palpably unreasonable conduct is "a more obvious and

14

manifest breach of duty and imposes a more onerous burden on the plaintiff." Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (quoting Kolitch v. Lindedahl, 100 N.J. 485, 493 (1985)). The term palpably unreasonable "implies behavior that is patently unacceptable under any given circumstance . . . . [F]or a public entity to have acted or failed to act in a manner that is palpably unreasonable, it must be manifest and obvious that no prudent person would approve of its course of action or inaction." Ibid. (quoting Kolitch, 100 N.J. at 493).

Generally, the issue of palpably unreasonable conduct is a question of fact for the jury. See Vincitore, 169 N.J. at 130. However, a determination of palpable unreasonableness, "like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented." Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993).

On this record, we are satisfied there are sufficient material disputed facts requiring a jury to determine whether defendant's conduct was palpably unreasonable under the circumstances. In addition, the judge failed to view the facts in the light most favorable to plaintiffs on the issue of defendant's palpably unreasonable conduct. If defendant conducted monthly or bi-monthly

inspections at the firehouse, as it claimed, a jury could reasonably determine defendant's failure to notice the cracked and worn saddle was patently unacceptable, requiring defendant to take immediate action to rectify the condition.

Because there were genuine disputed issues of material fact regarding defendant's entitlement to immunity under the TCA, the judge erred in granted summary judgment.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16