**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4200-19

MONIQUE RAYMOND,

      Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT OF
TRANSPORTATION and STATE
OF NEW JERSEY,

      Defendants/Third-Party
      Plaintiffs-Respondents,

and

BOROUGH OF TETERBORO,
TETERBORO DEPARTMENT
OF PUBLIC WORKS,
TETERBORO FIRE
DEPARTMENT, BOROUGH OF
MOONACHIE, MOONACHIE
DEPARTMENT OF PUBLIC
WORKS, MOONACHIE FIRE
DEPARTMENT, BOROUGH
OF HASBROUCK HEIGHTS,
HASBROUCK HEIGHTS
DEPARTMENT OF PUBLIC
WORKS, and HASBROUCK
HEIGHTS FIRE DEPARTMENT,

Defendants-Respondents.

_____

NEW JERSEY PROPERTY
LIABILITY INSURANCE
GUARANTY ASSOCIATION,

    Third-Party Defendants-
    Respondents.

_____

Argued December 7, 2021 – Decided December 23, 2021

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-2417-18.

Corey A. Dietz argued the cause for appellant (Brach Eichler, LLC, attorneys; Edward P. Capozzi, Corey A. Dietz, and Jeremy Hylton, on the briefs).

David W. Burns, Deputy Attorney General, argued the cause for respondents New Jersey Department of Transportation and State of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; David W. Burns, on the brief).

PER CURIAM

Plaintiff Monique Raymond appeals a July 13, 2020 Law Division order that dismissed her complaint against the New Jersey Department of Transportation (NJDOT) and the State of New Jersey (collectively the "State").

A-4200-19

Plaintiff sued the State and other municipal entities[1] after she fell into a storm drain located on the side of a highway. She injured her knee and back and contended the missing drain that caused her to fall and sustain those injuries was a dangerous condition.

After the completion of discovery, the State moved for summary judgment. The court granted the State's application after concluding plaintiff failed to establish liability under the New Jersey Tort Claims Act (TCA), N.J.S.A 59:1-1 to -12-3. On appeal, plaintiff argues the court committed error in granting summary judgment because the motion record contained disputed questions of material fact. We disagree and affirm.

I.

We derive the following facts from the competent evidence submitted by the parties in support of, and in opposition to, the summary judgment motions, viewed in a light most favorable to plaintiff. Brill v. Guardian Life Ins. of Am., 142 N.J. 520, 540 (1995).

On July 4, 2017, plaintiff was walking along Route 46 to her place of employment in Teterboro when she fell into a collapsed storm drain. Plaintiff

---

[1] The remaining defendants and the third-party defendant were either dismissed with prejudice by court order, or without prejudice by stipulation. None of those dismissed parties have participated in this appeal.

A-4200-19

testified at deposition that her fifteen-minute walk included a one- to two-minute portion along the highway where the public sidewalk ends, requiring her to traverse over a grass pathway "carved out in dirt" across an exit ramp. It was near this location where she stated she fell to the bottom of the missing storm drain.

The storm drain is classified as a Type B drain by NJDOT and consists of a metal grate that when installed is flush with the pavement. The drain is comprised of a curb piece, or header, which connects the metal grate to the curb along with a backplate. The backplate is installed behind the curb piece, and here, was embedded in a grass area along a jug handle on Route 46. The opening of the drain measures approximately four feet in diameter and ten feet deep.

When plaintiff fell, she scraped her back, and the impact upon landing forced her right knee to hit the wall of the drain. Plaintiff stated she spent ten minutes climbing out of the drain using the ladder mounted on the inside wall and immediately called 9-1-1. She reported being in pain to the responding officers and was transported to a nearby hospital. Plaintiff recalled the pain as excruciating and stated she felt a "burning sensation" all over her body.

At the hospital, medical staff performed several x-rays, which did not reveal any acute findings. The hospital discharged plaintiff with crutches as she

4

was unable to walk without assistance. A month later, plaintiff reviewed the results of magnetic resonance imaging (MRI) scans with her doctors. Those scans revealed she "had herniated bulging slipped discs in [her] neck and [her] back, and . . . a torn meniscus tear in [her] right knee."

Plaintiff began physical therapy, and on October 10, 2017, underwent arthroscopic surgery to repair her meniscus tear. Plaintiff explained that as a result of the accident, she was unable to ride a bike, run, dance, or exercise, and that daily household chores were difficult to accomplish. At the time of deposition, plaintiff still could not sit or stand for long periods of times, which she stated prevented her from working. She also reported difficulty sleeping and having severe anxiety about the accident.

Sergeant Jeffrey Napolitano of the Moonachie Police Department testified that he was working traffic detail on July 4, 2017, about fifty yards from where plaintiff fell. He stated plaintiff "limp[ed]" towards him to tell him about the accident, and he then investigated the storm drain. Unlike other collapsed storm drain incidents that he had seen, he noted the drain appeared to have collapsed in half.

Sergeant Napolitano concluded a truck ran over the grate because he saw fresh tire tracks on the curb and grass "leading up to where the grate would have

5

been on the curb portion . . . ." He also testified the area plaintiff fell was "heavily trafficked," and is the only point to traverse for those walking on Route 46 to access the nearby shopping center.

Officer Vito Detrizio, also of the Moonachie Police Department, testified that he was the responding officer to plaintiff's 9-1-1 call. He found plaintiff crying at a train station about three hundred feet from the accident site complaining of intense knee pain. Officer Detrizio also observed the collapsed storm drain and described the "top portion" as missing. He found that piece at the bottom of the drain and also observed tandem tire tracks near the drain leading him to conclude a tractor trailer caused the damage.

He also testified he had previously observed tractor trailers drive over this particular drain after failing to negotiate a wide turn. He could not determine when the storm drain collapsed, but believed it was unlikely it was more than a week, and noted it was common for people to walk in the area of the accident.

Joseph DeVita, a crew supervisor for NJDOT's highway maintenance department, testified that he was off duty the day of the accident as it was a holiday, but he was responsible for maintaining the area where plaintiff fell. As part of his responsibilities, he occasionally drove an assigned area of Route 46,

6

which included "north of 500" storm drains, to monitor for dangerous conditions.

DeVita did not maintain records of his inspections, but testified that anywhere from zero to ten storm drains in his area of responsibility could collapse in a month. He also acknowledged that a missing storm drain would be considered an emergency because it was an "immediate danger to life and health."

After the incident, the State placed a temporary steel plate over the opening to eliminate the hazard. After reviewing pictures of the incident, DeVita stated he believed a tractor trailer, or some kind of vehicle, ran over the storm drain causing it to collapse but was unsure when that event occurred. He also stated that had he been driving and noticed tire marks near a storm drain like the one in which plaintiff fell, he would have inspected the area.

Plaintiff supported her claim with an expert report of Richard Balgowan, P.E. He stated photos of the area "show[] that traffic regularly runs over this inlet." Balgowan concluded that the "grate and frame" of the storm drain were intact at the time of the accident, but that the curb piece and backplate were missing. Balgowan noted that in over thirty-five years of experience related to the construction and maintenance of roads, including twenty-seven with

7

NJDOT, he has "never seen a storm drain head piece and back plate get dislodged, broken into pieces and fall to the bottom of a storm drain as occurred with [plaintiff's] incident."

Balgowan further concluded that the damage to the drain was caused by the State's improper installation. He maintained that "normal traffic loads" driving over the curb piece or the backplate would not cause the storm drain to collapse unless the curb piece or backplate had been improperly installed. Balgowan explained that if the curb piece or back plate was loose or not properly "recessed" into the drain's frame, the "weight of a truck could cause the back plate to rock, change position, break into pieces and fall to the bottom of the storm drain."

Balgowan also stated the installation history of the storm drain was unknown, but later in his report relied upon DeVita's statement that it had been updated when the nearby Wal-Mart was built. He also suggested the drain had been upgraded "to comply with the current storm water management regulations associated with the Federal Clean Water Act."

Balgowan determined the curb piece was not original and "modification may have utilized 'recycled' used parts as opposed to a completely new unit." He ultimately concluded NJDOT failed to "properly install the storm drain

8

header/curb piece and/or back plate when they upgraded it" and it "knew, or should have known, that vehicles/trucks were going over the curb and the storm drain curb pieces and backplate."

Peter Svoboda, P.E., the State's expert, disagreed with Balgowan's opinion and concluded that "damage to the grate and frame is consistent with heavy truck tire and or tractor trailer damage." He noted the "two slot[t]ed bolt holes" where the curb piece had been mounted indicated the presence of a nut and bolt "holding the curb piece in place" and preventing it from being "sheared off" by truck tires. "Had the [curb] piece not been bolted," he concluded, "then the bolted corners would not have broken off" as occurred here.

Svoboda further explained that the elevated dirt "pushed up onto the grass" as seen in the photographs taken the night of the accident was consistent with a truck hitting the curb piece and pushing the backplate toward the grass. He determined that the damage to the storm drain was a "very recent occurrence," and concluded there was "no evidence of any action or inaction on the part of the [NJDOT] that caused or contributed" to plaintiff's injuries. He also noted that while the overall interior of the drain measures almost four feet, when only the curb piece and the backplate are missing, as occurred here, the opening would only measure approximately twenty inches wide.

In June 2019, plaintiff tripped on her apartment stairs while moving furniture. She sought treatment at a hospital complaining of knee pain and informed medical staff that "she fe[lt] like she tore her meniscus again as pain fe[lt] similar to when she tore her meniscus in the past." Plaintiff received an MRI and was diagnosed with a complex lateral meniscal tear.

On September 24, 2019, plaintiff underwent a second arthroscopic surgery to address the new meniscal tear. In a status examination approximately one week after her second surgery, plaintiff's treating physician, Keith Johnson, M.D., noted that she still could not fully extend her right knee. Dr. Johnson also concluded plaintiff would require ongoing medical care and that her injuries, which "are directly and causally related" to her fall in the storm drain, "are permanent in nature in that they have failed to return to normal function nor will they return to normal function with continued care."

Plaintiff testified in a subsequent deposition several months after her second surgery to feeling some tenderness in her knee but "feel[ing] a lot better" and was no longer experiencing pain. She noted, however, she was still unable to dance or exercise like she used to. Plaintiff further explained that she would be returning to work as a sales floor associate.

A-4200-19

Defendants moved for summary judgment on June 9, 2020, arguing: 1) to the extent that plaintiff's claims related to a design defect of the drain, or the allocation of its resources in monitoring the condition of the drain, the State had absolute immunity under the TCA; 2) plaintiff failed to state a claim under N.J.S.A. 59:4-2 for an alleged dangerous condition; and 3) plaintiff failed to establish she sustained a qualifying permanent loss of a bodily function, under N.J.S.A. 59:9-2.

Defendants also argued that Dr. Johnson's medical reports failed to address plaintiff's subsequent injury. Because the report upon which plaintiff relied did not mention the June 2019 fall, or the hospital records relating to that second fall, defendant argued that plaintiff had not sufficiently differentiated between her injuries and Dr. Johnson "never took into account that [plaintiff] re-injured the same body part complained of in this case." Defendant therefore contended that plaintiff failed to establish a causal relationship between her accident and any permanent injury.

Plaintiff opposed the motion, arguing that the record contained genuine issues of material fact as to defendants' constructive notice of the collapsed storm drain because NJDOT was aware that up to ten storm drains collapse per month in a given maintenance area. Plaintiff further argued that the State's

actions or inactions constituted "palpably unreasonable" conduct and plaintiff's injuries qualified as "permanent loss of a bodily function" under the TCA. Plaintiff also emphasized that the TCA did not require a comparative analysis as to her second injury, but even if she did not meet the threshold of sustaining a permanent injury, she was still entitled to recovery of her economic losses.

After considering the motion record and hearing oral arguments, the court granted the State's motion. In its accompanying oral decision, the court held that the collapsed drain qualified as a dangerous condition, a point not disputed by the parties.

The court concluded, however, that plaintiff failed to satisfy the notice requirements under N.J.S.A. 59:4-2. Specifically, the court explained that there was no evidence to support the conclusion that the State had actual or constructive notice of the dangerous condition prior to the July 4, 2017 incident. The court also concluded plaintiff failed to demonstrate a qualifying injury under N.J.S.A. 59:9-2.

Finally, the court noted it had a "problem" with plaintiff's expert report, explaining that Balgowan failed to explain when the damage to the drain occurred or support his opinions by specifically referencing the photographs taken the night of the incident. Because the State failed to move to bar the report

12

as a net opinion, however, the court did not base its decision on any deficiencies in Balgowan's report.

On August 7, 2020, the court issued a supplemental written opinion under Rule 2:5-1(a) to address Balgowan's opinion suggesting that the NJDOT improperly installed the storm drain and backplate. Under such a circumstance, NJDOT would have arguably created a foreseeable and dangerous condition, obviating the requirement that plaintiff establish the State had constructive notice.

On that issue, the court determined Balgowan's conclusion that the State created the dangerous condition was an inadmissible net opinion because his report failed to give the "whys and wherefores" supporting that opinion. The court explained that Balgowan did not challenge the design or material composition of the storm drain, identify how much weight it could bear and at what angle, explain how installation was contrary to accepted standards, or make any assessment as to when, or under what circumstances, the drain collapsed. Thus, the court concluded plaintiff was not relieved of her obligation to establish notice as required under N.J.S.A. 59:4-2. This appeal followed.

Before us, plaintiff challenges the court's July 13, 2020 order on primarily four grounds. First, she argues the motion record contained disputed questions

of material fact as to whether the State had constructive notice of the dangerous condition and whether the State's actions were palpably unreasonable. Second, she contends the court failed to resolve all reasonable inferences in her favor, made adverse credibility findings regarding Balgowan's opinions, and improperly supplemented its oral decision with a Rule 2:5-1(a) statement. Third, she maintains the court erred in concluding she failed to establish a qualifying injury under the TCA. Finally, she argues the court mistakenly dismissed her claim for economic damages.

We agree with the court that plaintiff failed to establish the State had actual or constructive notice of the damaged storm drain. We also conclude the court properly amplified its July 10, 2020 oral opinion with a timely Rule 2:5-1(a) statement. As a result, we need not consider plaintiff's remaining arguments regarding the propriety of the court's rulings regarding whether her injury was permanent or substantial under the TCA, and her corresponding economic damages claim.

## II.

As noted, in her first point, plaintiff maintains the judge erred in granting the State summary judgment as the motion record contained factual disputes of a genuine and material nature regarding whether the State had constructive

14

notice of the storm drain's dangerous condition. Specifically, plaintiff relies on McGowan v. Borough of Eatontown, 151 N.J. Super. 440, 450-51 (App. Div. 1977), and contends DeVita's testimony that he responded to as many as ten storm drain collapses a month supported the factual inference that the State was on constructive notice of storm drain collapses as they were "predictably recurrent." She also asserts Balgowan's opinion that the storm drain was improperly secured created a factual question regarding the State's constructive notice. We disagree with both arguments.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Summary judgment must be granted if the court determines "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. We accord no special deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

Public entity liability is restricted under the TCA. Polzo v. Cty. of Essex

(Polzo II), 209 N.J. 51, 55 (2012). Generally, a public entity is "immune from

tort liability unless there is a specific statutory provision imposing liability."

Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2012) (citing Collins v. Union

Cty. Jail, 150 N.J. 407, 413 (1997)); see also N.J.S.A. 59:1-2, 2-1. Accordingly,

"immunity for public entities is the general rule and liability is the exception."

Kemp v. State, 147 N.J. 294, 299 (1997); accord D.D. v. Univ. of Med. &

Dentistry of N.J., 213 N.J. 130, 134 (2013) (describing that rule as the "guiding

principle" of the TCA (quoting Coyne v. State Dep't of Transp., 182 N.J. 481,

488 (2005))).

Under the TCA:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

A-4200-19

> Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.
>
> [N.J.S.A. 59:4-2.]

Thus, in order to succeed on a premises liability claim, a plaintiff must prove: 1) the public property was a dangerous condition; 2) "the dangerous condition created a [substantial and] foreseeable risk of, and actually caused, injury to plaintiff;" 3) the public entity knew of the dangerous condition; and 4) the public entity's action to protect against the dangerous condition was palpably unreasonable. Muhammad v. N.J. Transit, 176 N.J. 185, 194 (2003). Plaintiff's obligation to demonstrate these elements is a "heavy burden." Foster v. Newark Hous. Auth., 389 N.J. Super. 60, 65-66 (App. Div. 2006).

Here, we agree that summary judgment was appropriate because plaintiff did not establish that the State had actual or constructive notice of a dangerous condition, and even assuming the motion record created a factual question on that issue, the State's actions were not palpably unreasonable.[2]

---

[2]  Although the court did not make a finding as to whether the State's actions were palpably unreasonable, that issue was briefed by both parties and we accordingly address it for purposes of completeness, noting that appeals are

"A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a). "A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b).

"The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). "Whether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set forth in N.J.S.A. 59:4-3(a) and (b), not by whether [for example] 'a routine inspection program' by the [public entity] . . . would have discovered the condition." Polzo II, 209 N.J. at 68.

taken from orders, not opinions. Luppino v. Mizrahi, 326 N.J. Super. 182, 185 (App. Div. 1999).

A-4200-19

We initially note that at oral argument before the court and us, plaintiff conceded that the State did not have actual notice of the missing storm drain. That concession is consistent with the motion record.

As to constructive notice, we are satisfied that the record and any reasonable inferences to be drawn therefrom failed to create a genuine and material question of fact on that issue. Indeed, the record is devoid of evidence of prior incidents related to the particular storm drain where plaintiff fell. Nor was the State aware of any issue with respect to the storm drain based on complaints from third parties. Further, plaintiff failed to establish that the dangerous condition "existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b). In fact, the proofs established precisely the opposite.

Even if we were to consider Balgowan's report on the issue of constructive notice, despite our agreement with the court that his opinions are inadmissible, see infra at pp. 25-26, an improperly secured storm drain as described in his report would not have been an obvious dangerous condition until it collapsed, and he was unable to offer an opinion as to when that event occurred. Sergeant Napolitano, however, indicated he saw "fresh" tire tracks running over the grate,

19

and Officer Detrizio believed the collapse could not have been more than a week before plaintiff's fall. Finally, Svoboda's report opined that the collapse was a "very recent occurrence."

In addition, plaintiff's reliance on McGowan, 151 N.J. Super. 440, is misplaced. In that case, the plaintiff was involved in an accident on a state highway when he drove over an isolated ice patch, which formed from a nearby restaurant draining water onto the highway. Id. at 443. The ice patch was a recurring problem which had been reported to the State by the local police, and the State would customarily salt or sand the area. Id. at 444. Although there was no evidence that the State was actually notified of the ice patch on the day when the plaintiff was injured, because of the prior notices, we concluded "the State was certainly on constructive notice within the meaning of N.J.S.A. 59:4-3(b) that the condition would re-occur under predictable circumstances." Id. at 448.

The facts in McGowan are not present here. There is no evidence in the record that defendants received notice of a collapsed storm drain where plaintiff fell or that anyone else had fallen there. Nor is there evidence in the record that a special condition, such as the drainage from the driveway in McGowan, caused this particular storm drain to collapse on a regular, predictable basis.

20

We also reject plaintiff's argument that the absence of maintenance records or reports supports an inference of constructive notice. DeVita's testimony that as many as ten storm drains would collapse in a month, under circumstances not explained in the record, and when there are "north of 500" storm drains in his extensive coverage area does not show a regular occurrence as in McGowan sufficient to create a question of fact regarding the State's constructive notice of the collapse of this particular storm drain. See Polzo II, 209 N.J. at 67-68 ("If failing to discover a dangerous defect in public property were the equivalent of creating the defect, the Legislature would have had no need to provide for liability based on actual or constructive notice.").

III.

Apart from proof of notice, to establish liability against a public entity under N.J.S.A. 59:4-2, a plaintiff must establish a prima facie case that the action or inaction of the public entity was "palpably unreasonable." Coyne, 182 N.J. at 493; N.J.S.A. 59:2-3(d). The term "palpably unreasonable" implies "behavior that is patently unacceptable under any given circumstance." Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003); see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (to constitute palpably unreasonable conduct, "'it must be manifest and obvious that no prudent person would approve of [the] course

of action or inaction'" (quoting Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979))). Further, palpably unreasonable conduct "implies a more obvious and manifest breach of duty" than negligence and "imposes a more onerous burden on the plaintiff." Williams, 171 N.J. Super. at 286.

Whether the public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 130 (2001). However, a determination of palpable unreasonableness, "'like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented.'" Maslo v. City of Jersey City, 346 N.J. Super. 346, 351 (App. Div. 2002) (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Id. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998)).

Here, the record is barren of proof directly or circumstantially supporting the claim that the State acted in a palpably unreasonable manner regarding the installation or maintenance of this particular storm drain, the procedure in which the State investigated such incidents, or how it responded to plaintiff's accident.

IV.

In her second point, plaintiff argues that the judge erred by classifying Balgowan's report as a net opinion, particularly when the State failed to move to preclude his report on that basis. She also maintains the court made improper credibility findings and contends that we should disregard the judge's supplemental <u>Rule</u> 2:5-1(a) statement. Again, we disagree with these arguments.

We first address, and reject, plaintiff's argument that we should disregard the judge's timely <u>Rule</u> 2:5-1(a) statement. To properly resolve this issue, it is important to note that the supplemental statement addressed an argument <u>plaintiff</u> raised before the court -- that the NJDOT allegedly improperly installed the storm drain.

Under New Jersey law, when a defendant's actions create a foreseeable risk of harm, an injured plaintiff need not prove actual or constructive notice. <u>Tmczyszyn v. Columbus Gardens</u>, 422 N.J. Super. 253, 264 (App. Div. 2011). As the issue of the proper installation of the storm drain was squarely raised before the court by way of Balgowan's report and in summary judgment proceedings, we find no error in its decision to address the issue in a supplemental decision after plaintiff filed her notice of appeal, a procedure

23

expressly permitted by Rule 2:5-1(b) ("Within [fifteen] days [after the appellant has placed the trial judge on notice of the appeal] . . . the trial judge may file and mail to the parties an amplification of a prior statement, opinion, or memorandum made either in writing or orally and recorded pursuant to [Rule] 1:2-2").

We also find no error in the court's substantive analysis of the issue and, as such, conclude the judge did not abuse his discretion in concluding Balgowan's report constituted inadmissible net opinion. In addition, we are satisfied the court did not improperly evaluate and weigh the credibility of the witnesses on summary judgment.

A determination on the admissibility of expert testimony is committed to the sound discretion of the trial court. Townsend, 221 N.J. at 52 (citing State v. Berry, 140 N.J. 280, 293 (1995)). The Supreme Court has instructed that "we apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53 (alternation in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)). N.J.R.E. 702 identifies when expert testimony is permissible and requires the experts to be qualified in their respective fields.

N.J.R.E. 703 addresses the foundation for expert testimony. Expert opinions must "be grounded in facts or data derived from (1) the expert's personal observations; or (2) evidence admitted at the trial; or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." Townsend, 221 N.J. at 53 (quoting Polzo v. Cty. of Essex (Polzo I), 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration in original) (quoting Polzo I, 196 N.J. at 583).

Therefore, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Ibid. (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)). The net opinion rule directs "that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). In short, the net opinion rule is "'a prohibition against speculative testimony.'" Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka, 301 N.J. Super. at 580).

We agree that Balgowan's report constitutes inadmissible net opinions because he failed to provide the "whys and wherefores" to support his conclusions. Rather, Balgowan arrived at his ultimate determination that the storm drain was improperly installed because he summarily concluded it was the "most likely scenario." In doing so, he failed to consider a host of variables, including but not limited to, disparate weight limits of vehicles (instead basing his conclusion on "normal traffic loads"), or weather conditions, and did not explain how an improper installation, assuming it occurred, would have sustained other incidents without causing a failure earlier than the two-year period in which he assumed the drain was replaced.

While an expert may form his opinion from specialized knowledge and experience, see N.J.R.E. 702, Balgowan's report assumed that the curb piece and backplate had been upgraded and installed improperly and hypothesized that the improper use of recycled materials could have caused the bolts securing the curb piece to come loose. However, he failed to buttress these assumptions with any record support or specific references to the incident photographs to explain how the NJDOT improperly installed the curb piece and why the manner in which it was installed deviated from any applicable industry standards.

As noted, in light of our decision that plaintiff failed to establish the State had constructive notice of a dangerous condition, or that its actions were palpably unreasonable, we do not address plaintiff's challenges to the court's dismissal of her damage claims or its ruling that plaintiff failed to establish a qualifying injury under the TCA. To the extent we have not addressed any of the parties' remaining arguments it is because we have determined that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION